IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LISA ANDERSON, on behalf of herself and all others similarly situated,

Plaintiff,

v.

Green Promise Farms LLC,

Defendant.

CLASS ACTION COMPLAINT

Case No.: 1:26-cv-13194

**COMPLAINT**

1) Plaintiff, LISA ANDERSON (hereinafter "Anderson"), brings this action on behalf of herself and all other persons similarly situated (hereinafter "Class Members") against Green Promise Farms LLC (hereinafter "Defendant"), and states as follows:

2) Anderson is a visually-impaired and legally blind person who requires screen-reading software to access website content using her computer. Anderson uses the terms "blind" or "visually-impaired" to refer to individuals who meet the legal definition of blindness, including individuals whose best-corrected central visual acuity is 20/200 or less in the better eye or whose visual field in the better eye is limited to 20 degrees or less Some individuals who meet this definition have limited vision; others have no vision.

3) According to the U.S. Census Bureau's 2024 American Community Survey, as summarized by the American Foundation for the Blind, approximately 9 million people in the United States, including approximately 285,000 individuals living in the State of Illinois, are visually impaired.

4) Anderson brings this civil rights action against Defendant for its failure to design, construct, maintain, and operate its Website https://plantaddicts.com/ (hereinafter "Website" or "the Website") to be fully accessible to and independently usable by Anderson and other blind or visually-impaired individuals. Defendant is denying blind and visually impaired individuals throughout the United States equal access to the goods and services Defendant provides to their non-disabled customers through the Website. Defendant's denial of full and equal access to its Website, and therefore denial of its products and services offered, is a violation of Anderson's rights under the Americans with Disabilities Act (the "ADA").

5) The Website provides to the public a wide array of the goods, services, price specials and other programs offered by Defendant. Yet, the Website contains significant access barriers that make it difficult if not impossible for blind and visually-impaired customers to use the Website. In fact, the access barriers make it impossible for blind and visually-impaired users to even complete a transaction on the Website. Thus, Defendant excludes the blind and visually-impaired from the full and equal participation in the growing Internet economy that is increasingly a fundamental part of the common marketplace and daily living. With technological advances in recent years, assistive computer technologies now play an essential role in enabling blind and visually impaired individuals to access digital content, allowing blind and visually-impaired individuals to fully and independently access a variety of services.

6) Blind and visually impaired individuals often rely more heavily on online platforms due to mobility-related barriers. The lack of an accessible website means that visually impaired individuals are excluded from fully experiencing and transacting on the Website and from purchasing goods or services from the Website.

7) Despite readily available accessible technology, such as the technology in use at other heavily trafficked retail websites, which makes use of alternative text, accessible forms, descriptive links, and resizable text, Defendant has failed to code core functions of the Website, including efficient navigation and checkout, so that they can be perceived and operated by screen-reader users. Defendant's sighted customers can independently browse, select, and buy online without the assistance of others. However, visually impaired individuals cannot independently complete a purchase on the Website without the assistance of a sighted person.

8) By failing to make the Website accessible to visually impaired individuals, Defendant is violating basic equal access requirements under federal law.

9) Congress provided a clear and national mandate for the elimination of discrimination against individuals with disabilities when it enacted the ADA. Such discrimination includes barriers to full integration, independent living and equal opportunity for persons with disabilities, including those barriers created by websites and other public accommodations that are inaccessible to blind and visually impaired individuals.

10) Anderson has visited the Website on or about March 17, 2026, and most recently on or about September 17, 2026, with the specific intent to purchase rose bushes on the Website. However, the access barriers described herein continuously prevented Anderson from completing that purchase independently. Anderson suffered, and continues to suffer frustration, humiliation, and discrimination as a direct result of Defendant's failure to provide a Website that is fully accessible to, and independently usable by, blind and visually-impaired individuals, in violation of her rights under the ADA.

11) Anderson is currently, and has been continuously, deterred from returning to the Website by her actual knowledge that the barriers she personally encountered on or about March

17, 2026, and again on or about September 17, 2026, remain unremedied. This ongoing deterrence is itself an injury-in-fact independent of any future visit, because Anderson cannot know whether the Website has become accessible without either attempting to use it again, which she reasonably will not do given her past experiences, or obtaining assurance through this litigation that the barriers have been cured. Notwithstanding this deterrence, Anderson intends to and will return to the website to purchase rose shrubs within thirty (30) days of Defendant's remediation of the access barriers described herein, and periodically thereafter, once Defendant remedies. This concrete and particularized injury – both from Anderson's past inability to complete a purchase and her ongoing deterrence from returning – is actual, imminent, and redressable by the injunctive relief sought herein.

12) Because Defendant's Website is not equally accessible to blind and visually-impaired consumers, it violates the ADA. Anderson seeks a permanent injunction to cause a change in Defendant's policies, practices, and procedures so that Defendant's Website will become and remain accessible to blind and visually-impaired consumers.

## JURISDICTION AND VENUE

13) This Court has subject-matter jurisdiction over this action under 28 U.S.C. §§ 1331 because Anderson's claims arise under the laws of the United States, specifically Title III of the ADA, and 42 U.S.C. § 12181 et seq., as Anderson's claims are brought pursuant to 42 U.S.C. § 12182 and are enforceable through the remedies, procedures, and rights set forth in 42 U.S.C. § 12188.

14) The Court has personal jurisdiction over Defendant because Defendant has purposefully availed itself of the privilege of conducting business in Illinois and has sufficient minimum contacts with this State to satisfy due process and the Illinois long-arm statute, 735 ILCS

5/2-209(a)(1), (c). Defendant, operates a publicly available interactive commercial Website through which it markets, sells, and ships its plants and related products to consumers throughout the United States, including to consumers located in Illinois and in this District, on a continuous and systematic basis as part of its ordinary retail operations. In addition, Defendant employs cookies, analytics, and other tracking technologies on its Website to collect information concerning Website visitors, including information used for advertising, marketing, and consumer engagement, thereby facilitating and supporting Defendant's commercial activities directed toward consumers, including consumers located in Illinois and within this District.

15) The Website's logo carries the tagline "Plants, Planters & Decor Shipped *Nationwide*" (emphasis added). The Website advertises free shipping on orders of $129 or more.

16) Defendant's Shipping Information page sets out a nationwide shipping rate table and offers free shipping on all houseplants. The page identifies only one geographic limit on Defendant's shipping: "We're not able to ship outside of the contiguous United States (lower 48 states)." Illinois lies within the contiguous United States. The page also explains that Defendant's grower network is spread across the country to serve customers nationwide. It states that Defendant ships plants directly from the nursery to the customer's door, primarily by FedEx or UPS. It describes a spring shipping schedule keyed to the customer's growing zone and promises fall shipments through the end of the fall planting season. The page states that Defendant is trusted by more than 114,000 customers.

17) As of October 2, 2026, the product page for the True Love™ Rose stated that the product "does not ship to: ID." The page listed no other excluded state.

18) Defendant markets its products to Illinois consumers by name. The Website includes a dedicated category page titled "Illinois Native & Nativar Plants." Shoppers reach it

through a menu that sorts native plants by state. As of October 15, 2026, the page listed 270 products that Defendant offers for sale as native or nativar plants suited to Illinois, each with its price and growing zones. The page also includes a table of Illinois state symbols (the Northern Cardinal, the Violet, and the White Oak) and a paragraph describing each one. Defendant built this page to sell plants to Illinois gardeners. It is part of the same Website, and runs through the same cart and checkout system.

19) Defendant also gives Illinois consumers tools to choose and buy plants for Illinois conditions. The Website's Plant Hardiness Zone Map page lets a shopper enter a ZIP code to find her USDA growing zone. The page then links her to product categories for each zone. As of October 15, 2026, the page identified Illinois as a state with land in growing Zones 5, 6, and 7. It linked each of those zones to a "Shop" category of Defendant's plants. The page also published average first and last frost dates for each zone, so customers could time their planting. Defendant tells shoppers to compare their own zone with the zone range on each product page before ordering. The "True Love" Rose is rated for Growing Zones 4 through 9. Each zone that Defendant's own map assigns to Illinois falls within that range. Defendant therefore markets the "True Love" Rose as a plant suited to Illinois gardens.

20) Anderson's claims arise directly out of Defendant's Illinois-directed conduct: Anderson, an Illinois resident, attempted to purchase Defendant's products from Illinois through the Website, and was denied full and equal access as a direct result of the barriers described herein. The exercise of jurisdiction over Defendant comports with traditional notions of fair play and substantial justice, as Defendant has continuously and deliberately targeted Illinois consumers as part of its ordinary course of business.

21) Venue is proper in this District under 28 U.S.C. §1391(b)(1) and (2) because Defendant conducts and continues to conduct a substantial and significant amount of business in this District, and a substantial portion of the conduct complained of herein occurred in this District because Anderson attempted to use the subject Website within this Judicial District.

22) Defendant, regularly conducts business in the State of Illinois, including in this District. Defendant has committed, and continues to commit, the acts or omissions alleged herein in the Northern District of Illinois causing injury and violated rights the ADA prescribes to Anderson and to other blind and other visually impaired-consumers. A substantial part of the acts and omissions giving rise to Anderson's claims occurred in this District: on several separate occasions, Anderson has been denied the full use and enjoyment of the facilities, goods and services offered to the general public, on Defendant's Website while using it from Cook County. These access barriers that Anderson encountered have caused a denial of Anderson's full and equal access in the past and now deter Anderson on a regular basis from accessing the Defendant's Website in the future.

23) The United States Department of Justice Civil Rights Division has recently provided "Guidance on Web Accessibility and the ADA." It states in part, "the Department has consistently taken the position that the ADA's requirements apply to all the goods, services, privileges, or activities offered by public accommodations, including those offered on the web."

24) This Court is empowered to issue a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

25) This lawsuit is aimed at providing visually impaired users like Anderson with a full and equal experience.

## THE PARTIES

26) Anderson, is and has been at all relevant times a resident of Cook County, State of Illinois.

27) Anderson is legally blind and a member of a protected class under the ADA, 42 U.S.C. § 12102(l)-(2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101 et seq. His visual impairment substantially limits the major life activity of seeing. Anderson, cannot use a computer without the assistance of screen reader software. Anderson has been denied the full enjoyment of the facilities, goods and services of the Website as a result of access barriers on the Website.

28) Defendant, a Connecticut Limited Liability Company, does business in this State with its principal place of business located at 122 Waterman Road, Lebanon, CT 06249, and is represented by its registered agent Mark A. Rosenblum, located at City Place I, 185 Asylum Street, Floor 22, Hartford, CT 06103.

29) Defendant owns, operates, and controls the Website, which does business under the name "Plant Addicts." The Website's Privacy Policy states that "Green Promise Farms, LLC ('us', 'we', or 'our') owns and operates www.plantaddicts.com."[1] The Website's Terms and Conditions likewise identify Green Promise Farms, LLC as the operator of the Website. They describe Defendant as a Connecticut limited liability company and state that "The Plant Addicts trademark is owned by Green Promise Farms, LLC."[2] The Terms also claim the Website's content, features, and functionality as Defendant's exclusive property. They treat each order placed through the Website as an offer to buy products from Defendant, with payment due to Defendant at the time of order. In the Privacy Policy, Defendant states that it processes and fulfills orders placed through

---

[1] Privacy Policy, Plant Addicts, https://plantaddicts.com/privacy-policy/ (last visited Oct. 15, 2026).
[2] Terms & Conditions, Plant Addicts, https://plantaddicts.com/terms-and-conditions/ (last visited Oct. 15, 2026).

the Website and provides customer service for the Website. It also states that it collects the shipping and billing addresses of its customers. Defendant therefore controls the Website's content, its checkout process, and its customer relationships. It also controls the coding that creates the barriers described in this Complaint.

30) Defendant provides to the public the Website, which provides consumers access to an array of goods and services, including, the ability to purchase a wide variety of plants, including bushes, bulbs, trees, perennials, houseplants, and edible plants, as well as planters, and gardening supplies. Consumers across the United States use Defendant's Website to purchase plants and related products. Defendant's Website is a place of public accommodation within the definition of Title III of the ADA, 42 U.S.C. § 12181(7), as it is a sales establishment operated by Defendant that offers goods and services to the public in the ordinary course of Defendant's retail business, regardless of whether that business is conducted through a physical storefront. The inaccessibility of the Website has deterred, and continues to deter, Anderson from making an online purchase of rose shrubs.

31) In addition, the Website is the principal means by which consumers can search Defendant's product collection and access plant-selection and care resources, growing-zone information, online ordering and home delivery, plant warranties and guarantees, rewards and wish-list features, and customer support. The Website also offers specialized plant collections based on factors such as climate, sunlight, and pet safety. Customers can receive free shipping on orders of $129 or more, create accounts and track the status of their orders, and review Defendant's shipping information and return policy to make more informed purchasing decisions.

32) Furthermore, neither the "Contact Us" feature nor Defendant's telephone line and email provides blind and visually-impaired consumers with access that is equal to the access the

Website affords sighted consumers. On its face, the chat feature is offered for advice, product recommendations, and Defendant describes its telephone line and email and as a resource for managing orders. Sighted consumers can independently browse Defendant's products, review their selections, and complete checkout on the Website at any time. By contrast, a blind consumer relegated to chat, email or telephone must depend on Defendant's staff to make and confirm selections on her behalf, cannot independently verify that her intended selections have been applied before she pays, must disclose her order and payment details to a third party, and, upon information and belief, is limited to the hours during which Defendant's staff are available. Such alternatives do not provide communication that is as effective as that provided to sighted consumers, and they fail to protect the privacy and independence of blind consumers as the ADA requires. See 28 C.F.R. § 36.303(c)(1)(ii).

## NATURE OF THE CASE

33) The Internet has become a significant source of information, a portal, and a tool for conducting business, doing everyday activities such as shopping, learning, banking, researching, as well as many other activities for sighted, blind and visually-impaired persons alike.

34) Visually impaired individuals access websites by using keyboards in conjunction with screen-reading software which vocalizes visual information on a computer screen. Except for a visually impaired person whose residual vision is still sufficient to use magnification, screen access software provides the only method by which a visually impaired person can independently access the Internet. Unless websites are designed to allow for use in this manner, visually impaired individuals cannot fully access the information, products and services offered online.

35) For screen-reading software to function properly, website content must be capable of being rendered accurately into text. If the website content is not capable of being rendered into text, the visually impaired user is unable to access the same content available to sighted users.

36) Visually impaired users of Windows-enabled computers and devices have several screen-reading software programs available to them. Job Access With Speech, otherwise known as "JAWS", is currently one of the most popular, and downloaded screen-reading software programs.

37) The international website standards organization, the World Wide Web Consortium, known throughout the world as W3C, has published version 2.2 of the Web Content Accessibility Guidelines ("WCAG 2.2"). WCAG 2.2 are well-established guidelines for making websites accessible to blind and visually-impaired persons. These guidelines are widely followed by many large business entities and government agencies to ensure their websites are accessible. Courts and the Department of Justice have frequently looked to the WCAG 2.2 guidelines as a benchmark for website accessibility. The federal government has also promulgated website accessibility standards under Section 508 of the Rehabilitation Act. These guidelines are readily available via the Internet, so that a business designing a website can easily access them. These guidelines recommend several basic components for making websites accessible, including, but not limited to: adding alt-text to graphics, ensuring that all functions can be performed using a keyboard and not just a mouse, ensuring that image maps are accessible, and adding headings so that visually impaired persons can easily navigate the site. Without these very basic components, a website will be inaccessible to a visually impaired individual using a screen reader. Furthermore, websites must be accessible to users of all proficiency levels, including screen-reader users with minimal technical experience

of screen-reading software and need to be able to work with all browsers. Finally, websites need to be continually updated and maintained to ensure that they remain fully accessible.

## FACTUAL ALLEGATIONS

38) Defendant owns, controls and operates the Website and makes it available to consumers in the State of Illinois and throughout the United States.

39) The Website is a commercial platform through which consumers can browse and purchase products and services for online sale. The online store allows the user to view a wide selection of plants and related products, make purchases, and perform a variety of other functions.

40) Among the features offered by the Website are the following:

a) Consumers may use the Website to connect with Defendant on various social media platforms, including Facebook, Instagram, Pinterest, and Twitter (X);

b) An online store that allows customers to purchase a wide variety of plants, including bushes, bulbs, trees, perennials, houseplants, and edible plants, as well as planters, and gardening supplies for delivery to their doorsteps; and

c) Learning about shipping and return policies, reading customer reviews, and learning about the Plant Addicts promo codes, reward programs, and the Plant Hardiness Zone Map, amongst other features.

41) This case concerns Defendant's policy and practice of denying visually impaired individuals' access to the goods and services offered by the Website. Due to Defendant's failure and refusal to remove access barriers to the Website, visually impaired individuals have been and

are being denied equal access to Defendant as well as to the numerous goods, services and benefits offered to the public through the Website.

42) Defendant denies the visually impaired users' access to goods, services and information made available through the Website by preventing them from freely navigating the Website.

43) The Website contains access barriers that prevent free and full use by Anderson and visually impaired individuals using keyboards and screen-reading software. These barriers are pervasive and include but are not limited to: inadequate focus order, unclear labels for interactive elements.

44) When visiting the Website on or about March 17, 2026, and more recently on or about September 17, 2026 using JAWS screen-reader, Anderson encountered accessibility barriers that denied her full and equal access to the Website and prevented her from completing her intended purchase. The barriers described are not isolated or transient defects but are structural features of the Website's design and coding that affect core functions of the Website, including but not limited to focus order, identifying the purpose, and state of interactive controls– and render the Website inaccessible to, and not independently usable by blind and visually-impaired persons who use screen-reader software, including Plaintiff and the members of the putative class she seeks to represent.

a) Interactive elements are not programmatically associated with their labels. As a result, screen reader software does not announce their accessible names, making it difficult for blind users to identify the purpose of the interactive elements;

b) Labels of interactive elements do not provide sufficient context to identify their purpose. As a result, blind users cannot clearly determine the function or destination of the interactive elements;

c) Interactive elements are not keyboard focusable. The website has functionality that is dependent on the specific devices, such as a mouse, and is not available to the assistive technology users;

d) Search suggestions that appeared below the Search bar are not keyboard focusable. Legally blind users should be able to navigate through the search suggestions using the keyboard "tab" or "arrow" keys. This is critical for the customers who cannot use a mouse;

e) Keyboard focus does not move to the dialog when it opens. As a result, blind users encounter content in an illogical sequence and cannot efficiently interact with the dialog using the keyboard;

f) The link text and alternative text of the image convey similar information and lead to the same destination. As a result, blind users must navigate through redundant links, making keyboard and screen reader navigation less efficient;

g) Interactive elements do not expose their current state programmatically. As a result, screen reader software does not announce whether the elements are selected, expanded, checked, or otherwise activated, making it difficult for blind users to determine their current status;

h) Interactive elements are not programmatically identified with the appropriate role. As a result, screen reader software does not announce them accurately, making it difficult for blind users to identify their purpose and interact with them effectively;

i) The Navigation menu contains elements within drop-down menus, and they do not announce their state - "collapsed" or "expanded". As a result, assistive technology users do

not know what part of the Navigation menu they navigate or if they skipped sub-menu links;

j) Non-interactive elements are included in the keyboard focus order. As a result, blind users encounter unnecessary focus stops that do not provide meaningful interaction, making keyboard navigation less efficient.

45) Consequently, visually impaired customers are essentially prevented from purchasing any items on the Website.

46) The Website cannot be used to complete a transaction by keyboard alone. Yet, it is a fundamental tenet of web accessibility that for a web page to be accessible to Anderson and visually impaired people, it must be possible for the user to interact with the page using only the keyboard. Indeed, Anderson and visually impaired users cannot use a mouse because manipulating the mouse is a visual activity of moving the mouse pointer from one visual spot on the page to another. Thus, the Website's inaccessible design, which cannot be operated by keyboard alone to complete a transaction, denies Anderson and visually impaired customers the ability to independently navigate and/or make purchases on the Website.

47) Due to the Website's inaccessibility, Anderson and visually impaired individuals must in turn spend time, energy, and/or money to make their purchases at traditional brick-and-mortar retailers. Some visually impaired customers may require a driver to get to the stores or require assistance in navigating the stores. By contrast, if the Website was accessible, a visually impaired individual could independently investigate products and make purchases via the Internet as sighted individuals can and do. According to WCAG 2.2 Guideline 2.4.2 'Focus Order', the focus must move in a predictable and logical order through all interactive elements on the page. Ensuring proper focus order enables users, including those using assistive technologies such as

screen readers or keyboard-only navigation, to navigate the content efficiently. If the focus order is not logically structured, users may become disoriented, making it difficult for them to understand or interact with the page's elements. This can significantly impair the accessibility and usability of a website for individuals with disabilities. Thus, Defendant's inaccessible design deprives Anderson and visually impaired customers of the opportunity to make purchases on the Website on their own.

48) The Website thus contains access barriers that deny full and equal access to Anderson, who would otherwise use the Website and who would otherwise be able to fully and equally enjoy the benefits and services of the Website in the state of Illinois and throughout the United States.

49) Anderson has made an attempt to complete a purchase on the Website. On or about March 17, 2026, while searching online for plants, she visited Defendant's Website, Plantaddicts.com, and decided to explore the Website because it offered an extensive selection of rose bushes in a diverse varieties, colors, and growing characteristics. She was particularly interested in finding rose bushes suitable for planting in her backyard. However, during her first visit she failed to complete the purchase due to multiple accessibility errors. She returned to the Website on or about September 17, 2026, from Chicago, Illinois, to attempt the purchase again because the Website offered the type of product she was looking for. During each visit, Anderson attempted to browse the Red Flowering Rose Shrubs category and add the True Love™ Rose to her cart. While navigating the Website on or about March 17, 2026, and most recently on or about September 17, 2026, Anderson encountered multiple accessibility barriers that made her navigation inefficient. Specifically, while browsing the product page, she encountered the Simple Plant Spacing Calculator, which contained form fields that did not provide descriptions or

instructions regarding the information she needed to enter to calculate the effective planting area. As a result, Anderson could not use the calculator to determine the number of plants needed for a particular planting area or how they should be spaced. Additionally, when she added the desired product to her cart, a dialog appeared, but focus was not shifted to the dialog's interactive elements, preventing Anderson from locating and interacting with the Cart dialog and proceeding to checkout. As a result of these accessibility issues, Anderson was unable to complete her purchase. These access barriers render the Website inaccessible to, and not independently usable by, blind and visually impaired individuals.

50) Anderson intended to purchase Defendant's rose bushes because, based on Defendant's description, they sounded beautiful and were the kind she wanted for her backyard. She was drawn to Defendant's Website by its eclectic rose collection, and she appreciated the varied choices it offered. She was also attracted by the product's appealing name and believed the plants would bloom fully and grow into full, healthy rose bushes. Her interest was therefore based on her desire to plant the rose bushes in the corner of her garden, as well as on Defendant's varied selection and pricing.

51) During her visits to Defendant's Website, however, Anderson encountered accessibility barriers that prevented her from independently completing the purchase. The experience was frustrating and exhausting, because she had already pictured the rose bushes in her garden and could not navigate the Website to buy them. Although the experience made Anderson less interested in shopping online, she still wants to purchase the rose bushes from Defendant because she believes they would bloom fully and make her garden more beautiful. Anderson has not returned to the Website since September 17, 2026, and she has no reason to believe the accessibility barriers have been fixed. She intends to check the Website from time to time to

determine whether she can complete the purchase independently. Anderson's intent to purchase from Defendant is not contingent or speculative. She believes she can purchase the rose bushes by the end of October, but in any event, she intends to return to the Website within thirty (30) days of Defendant's remediation of the access barriers described herein to complete a purchase, and to return periodically thereafter to explore their collections. Anderson is not using this litigation merely as a vehicle to challenge inaccessible websites in the abstract; she has an actual, product-specific interest in buying Defendant's rose bushes because she believes they would be a beautiful addition to her garden, and she values Defendant's varied selection and pricing.

52) The discriminatory treatment Anderson experienced is reasonably likely to continue absent judicial intervention. Despite the passage of time since Anderson's visit, Defendant has not represented to Anderson, to the Court, or to the public that it has remediated, or intends to remediate, the access barriers described herein. Defendant's Website continues to lack a remediation timeline, or other indication that Defendant has taken steps to bring the Website into compliance with the ADA. Absent an order from this Court, Anderson has no assurance that the barriers she personally encountered will not recur or persist indefinitely.

53) Anderson has articulated a genuine, product-specific interest in Defendant's rose shrubs, which is rooted in her interest in the product itself, her desire to have it in the corner of her garden, which are independent of and predating this litigation, as described above.

54) As described above, Anderson has actual knowledge of the fact that Defendant's Website, contains access barriers that render the Website to be inaccessible, and not independently usable by, visually impaired individuals.

55) These barriers to access have denied Anderson full and equal access to, and enjoyment of, the goods, benefits and services of the Website.

56) Defendant engaged in acts of intentional discrimination, including but not limited to the following policies or practices:

a) constructed and maintained a website that is inaccessible to visually impaired Class Members with knowledge of the discrimination; and/or

b) constructed and maintained a website that, despite being sufficiently intuitive for sighted users, is inaccessible to visually impaired Class Members; and/or

c) failed to take action to correct these access barriers in the face of substantial harm and discrimination against visually impaired Class Members.

57) Defendant utilizes standards, criteria or methods of administration that have the effect of discriminating against or perpetuating the discrimination of others.

58) Because of Defendant's denial of full and equal access to, and enjoyment of, the goods, benefits and services of Plantaddicts.com, Plaintiff and the class have suffered an injury-in-fact which is concrete and particularized and actual and is a direct result of Defendant's conduct.

**CLASS ACTION ALLEGATIONS**

59) Anderson, on behalf of herself and all others similarly situated, seeks certification of the following nationwide class pursuant to Rule 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure: "all legally blind individuals in the United States who have attempted to access the Website and as a result have been denied access to the enjoyment of goods and services offered by the Website, during the relevant statutory period."

60) There are questions of law and fact common to the class, including without limitation, the following:

(a) Whether the Website is a "public accommodation" under the ADA;

(b) Whether Defendant, through its Website, denies the full and equal enjoyment of its goods, services, facilities, privileges, advantages, or accommodations to individuals with visual disabilities in violation of the ADA; and

(c) Whether Plaintiff and the Class are entitled to declaratory and injunctive relief, and the nature and scope of that relief.

61) Anderson's claims are typical of the Class. The Class, like Anderson, is composed legally blind individuals who use screen-reading software, and claims that Defendant has violated the ADA by failing to update or remove access barriers on its Website so it can be independently accessible to the Class.

62) Anderson will fairly and adequately represent and protect the interests of the members of the Class because Anderson has retained and is represented by counsel competent and experienced in complex class action litigation, and because Anderson has no interests antagonistic to the members of the class. Class certification of the claims is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, making appropriate both declaratory and injunctive relief with respect to Anderson and the Class as a whole.

63) Alternatively, class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to Class Members clearly predominate over questions affecting only individual Class Members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

64) Judicial economy will be served by maintaining this lawsuit as a class action in that it is likely to avoid the burden that would be otherwise placed upon the judicial system by the filing of numerous similar suits by individuals with visual disabilities throughout the United States.

**FIRST CAUSE OF ACTION**
***Violation of the Americans with Disabilities Act ("ADA")***

65) Anderson, on behalf of herself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

66) Title III of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12182(a) provides that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." Title III also prohibits an entity from "[u]tilizing standards or criteria or methods of administration that have the effect of discriminating on the basis of disability." 42 U.S.C. § 12182(b)(1)(D)(i).

67) The Website is a place of public accommodation within the definition of 42 U.S.C. §§ 12181(7).

68) Defendant is subject to Title III of the ADA because it owns and operates the Website.

69) Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(i), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity.

70) Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(ii), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an

opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

71) Specifically, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(ii), unlawful discrimination includes, among other things, “a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations.”

72) In addition, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(iii), unlawful discrimination also includes, among other things, “a failure to take such steps as may be necessary to ensure that no individual with disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.”

73) There are readily available, well-established guidelines on the Internet for making websites accessible to the blind and visually-impaired. These guidelines have been followed by other business entities in making their websites accessible, including but not limited to ensuring adequate prompting and focus order. Incorporating the basic components to make their Website accessible would neither fundamentally alter the nature of Defendant’s business nor result in an undue burden to Defendant.

74) The acts alleged herein constitute violations of Title III of the ADA, 42 U.S.C. § 12101 et seq., and the regulations promulgated thereunder. Patrons of Defendant who are visually

impaired have been denied full and equal access to the Website, have not been provided services that are provided to other patrons who are not disabled, and/or have been provided services that are inferior to the services provided to non-disabled patrons.

75) Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations are ongoing.

76) As such, Defendant discriminates, and will continue in the future to discriminate against Anderson and members of the proposed Class on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations and/or opportunities of the Website in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181 et seq. and/or its implementing regulations.

77) Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Anderson and members of the proposed Class will continue to suffer irreparable harm.

78) The actions of Defendant were and are in violation of the ADA, and therefore Anderson invokes her statutory right to injunctive relief to remedy the discrimination.

79) Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Anderson, requests relief as set forth below.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully demands judgment in favor of Plaintiff and the class and against Defendant as follows:

a) A preliminary and permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq.;

b) A preliminary and permanent injunction requiring Defendant to take all the steps necessary to make the Website, into full compliance with the requirements set

forth in the ADA, and its implementing regulations, so that the Website is readily accessible to and usable by visually impaired individuals, , including but not limited to conformance with WCAG 2.2 Level AA standard, and further requiring Defendant to maintain such compliance on an ongoing basis, including WITH respect to any future updates, changes, or modifications to the Website;

c) An order requiring Defendant to submit to the Court and Plaintiff's counsel, within sixty (60) days of entry of judgment, and annually thereafter for a period of three (3) years, a written report detailing the specific steps taken to achieve and maintain ADA compliance, accompanied by an audit conducted by a qualified independent accessibility consultant;

d) A declaration that Defendant owns, maintains, and operates the Website in a manner that discriminates against the visually impaired and which fails to provide access for persons with disabilities as required by Americans with Disabilities Act, 42 U.S.C. § 12182, et seq;

e) An order certifying this case as a class action under Fed. R. Civ. P. 23(a) & (b)(2), appointing Anderson as Class Representative, and her attorneys as Class Counsel;

f) An award of costs and expenses of this action together with reasonable attorneys' and expert fees pursuant to 42 U.S.C. § 12205;

g) An order retaining jurisdiction over this matter for a period of no less than three (3) years following entry of final judgment to ensure Defendant's compliance with the injunctive relief ordered herein, and authorizing Plaintiff to seek enforcement

of the Court's orders through contempt or such other remedies as may be available; and

h) Such other and further relief as this Court deems just and proper.

Dated: October 27, 2026

EQUAL ACCESS LAW GROUP, PLLC
*Attorneys for Plaintiff*

**/s/ Russell Monilla**
By: Russell Monilla, Esq.
Bar No. 1048844
4903 Avenue N
Brooklyn, NY 11234
O: 844-731-3343 | D: 850-404-0382
Email: rmonilla@ealg.law